ALBANY,
Dec. 1832.

Wright
v.
Taylor.

---

SAMUEL WRIGHT, *appellant,* and JOHN TAYLOR, *respondent.*

Where a party bound himself by bond that A. and B. should execute certain articles of dissolution of a mercantile firm, and that the same should be delivered duly executed to the obligee by a certain day, in which articles it was recited that the said B. *had some interest in the profits of the concern in lieu and satisfaction for his services renderrd,* IT WAS HELD, that a memorandum, made by the witness in the attestation clause on the execution of the instrument by A. and B., that *it was understood, declared and protested by A. and B. that notwithstanding the recitals in the instrument, B. was not a partner, nor had any share in the profit or loss of the concern, but was merely entitled to compensation for services by a commission or per centage on the profits without being a partner,* did not vary the contract, and that the condition of the bond was complied with, notwithstanding such memorandum.

*It seems,* that even had the memorandum been contradictory to the body of the instrument, it would not have affected or varied its construction, on the ground that *parol derlarations,* varying or contradicting a written instrument, are inadmissible in evidence.

APPEAL from chancery. Samuel Wright and Andrew Tay-
lor were partners as commission merchants, transacting busi-
ness at Liverpool, in England, under the name of Wright,
Taylor & Co.; Wright residing here and Taylor in Eng-
land. On the 17th May, 1830, John Taylor, the father of An-
drew Taylor, proposed to Samuel Wright, that the firm of
Wright, Taylor & Co. should be dissolved, and articles of dis-
solution were accordingly drawn up between Samuel Wright
of the *first* part, Andrew Taylor of the *second* part, and
*David Selden* of Liverpool, of the *third* part ; whereby, after
*reciting* that the parties of the *first* and *second* part had there-
tofore been co-partners in trade, doing business under the
name and firm of Wright, Taylor & Co., *in which concern the
said David Selden had some interest in the profits,* in lieu and
satisfaction for his services rendered, and that the parties of
the *first* and *second* part had agreed to put an end to the said
co-partnership concern, and that Wright had agreed to secure
and pay to Andrew Taylor the sum of $35,000, and to as-
sign to him certain securities which he held individually,
and to assign and transfer to him all his right, title and in-
terest in the estate and property of the firm ; and that An-
drew Taylor had agreed to pay the outstanding claims against
the firm of Wright, Taylor & Co., Wright assigned unto
Andrew Taylor all the estate, property and debts belonging
to the firm, together with the individual claims above referr-
ed to, authorizing him to collect and appropriate the same
to his own use ; Taylor covenanted to pay all debts owing
by the firm of Wright, Taylor & Co. and, together with
*Selden,* released Wright from all claims and demands what-
soever, except the covenants contained in the articles of dis-
solution to be performed on his part; and Wright, on his part,
released Taylor from all claims and demands whatsoever,
except the covenants to be performed by him, and also gen-
erally released *Selden* without any reservation. The arti-
cles of dissolution thus being drawn, triplicate copies were
made, one of which was executed by Wright; and *John Tay-
lor,* the father of Andrew Taylor, entered into a bond to
Wright, bearing date 17th May, 1830, in the penal sum of
$50,000, conditioned that he would within nine months from
the date of the bond deliver to Wright a duplicate of the arti-

cles duly executed by *Andrew Taylor* and *David Selden*, (a copy of which articles was annexed to the bond.) The articles of dissolution, sent to Liverpool to be executed by Taylor and Selden, not being returned to this country at the expiration of the nine months specified in the bond, Wright commenced a suit on the bond in the supreme court of this state against John Taylor, assigning as a breach the non-delivery of the articles, and claiming damages by reason of the delay in the delivery thereof. On the 7th July, 1831, John Taylor tendered to Wright a duplicate of the articles of dissolution executed by *Andrew Taylor* and *David Selden,* which Wright declined to receive, because the attestation clause over the signature of the witness was in these words : " *Sealed and delivered by Andrew Taylor and David Selden,* (it being first understood, declared and protested by the said Andrew Taylor and David Selden, that notwithstanding the recital above contained, the said David Selden was not a partner nor had any share in the profit or loss of the said concern, but that he was merely entitled to compensation for services, by a commission or per centage on the profits, without being a partner,) *in the presence of* C. W. Clay, solicitor, Liverpool." John Taylor, at the time of tendering the articles executed by Andrew Taylor and David Selden, also offered to pay the costs of the suit commenced against him, which Wright refusing to receive, John Taylor filed a bill in chancery, praying a decree that Wright should discontinue his suit at law and deliver up the bond upon receiving the articles which had been tendered to him with such damages as he might have sustained by reason of the delay in the delivery of the same, and that in the meantime the suit at law be enjoined ; which injunction was granted. Whereupon, Wright filed a bill in chancery against John Taylor, before the *vice chancellor* of the first circuit, alleging that the protestation set forth in the attestation to the execution of the articles by Andrew Taylor and David Selden tended to prejudice if not totally to avoid the settlement which had been agreed upon, and necessarily to subject him to damages, and to deprive him of the security which he would otherwise have in David Selden, by way of contribution as a co-partner, in case Andrew Taylor should fail to make payment

of the debts of the firm of Taylor, Wright & Co., and praying that John Taylor might specifically perform the condition of his bond, by procuring the execution of the articles of dissolution as they were originally prepared ; that he pay the damages sustained by reason of the delay in delivering the articles, or in case of their non-delivery, duly executed within a time to be decreed by the court, that he pay the full penalty of the bond. The bill also prayed general relief. The defendant demurred.

The vice chancellor allowed the demurrer and dismissed the bill with costs. The complainant appealed to the chancellor, who affirmed the decree of the vice chancellor. Whereupon the complainant appealed to this court.

The cause was argued here, by

*D. Graham, jun.* for the appellant, who insisted principally in support of the appeal, that the execution of the articles by Andrew Taylor and David Selden, with the *protestation* set forth in the attestation of the witness, was not a performance of the condition of the bond of the respondent. A copy of the articles was annexed to the bond, and the engagement of the obligor was that the articles should be executed in the precise form agreed upon. Where there is a covenant that a deed shall be executed to effect a given object, it is competent for a court to determine whether there has been a performance; but where there is a specific covenant that a deed shall be executed in a particular form, and that already executed by one of the contracting parties, the question of substantial performance cannot be inquired into. In such a case there must be a literal performance. No variation can be permitted, and one party is not at liberty to impose upon the other the risk of receiving or refusing the instrument; in support of which position, he cited 4 *Brown's C. R.* 477 ; 3 *id.* 388 ; 3 *Russell,* 114 ; 2 *Ball & Beatty,* 288 ; *id.* 369 ; 1 *Hen. & Munf.* 132. He also insisted that the bill filed by the appellant was proper and necessary, that the fact of the protestation did not appear in the bill filed by Taylor to enjoin the suit at law, and that therefore all the equities of

the parties were not presented by that bill. That the bill in this case was properly filed, he cited 2 *Coxe*, 109 ; 7 *Johns. C. R.* 252; 15 *Vesey* 525 ; 1 *Vesey & Beame*, 535 ; 2 *Sch. & Lef.* 9 ; 5 *Wendell*, 656.

*J. P. Hall*, for respondent. The *protestation*, as it is called, did not vary the contract. The injury alleged in the bill is, that the effect of the protestation is to deprive the appellant of his right to call upon Selden as a partner for contribution in case Taylor shall fail to pay the debts of the firm of Wright, Taylor & Co. The articles of dissolution themselves repudiate the idea that Selden was a partner of that firm, why then complain of the protestation ? There was no necessity for filing the bill in this case ; in the answer of the appellant to the bill filed by the respondent, he had set up the protestation as an excuse for not accepting the articles executed by Andrew Taylor and David Seldon, and if entitled to avail himself of the objection, might do so as well under his answer as by a cross bill. *Coopers' Pl.* 87. 13 *Vesey*, 546. 1 *Dessaus.* 480.

The following opinions were delivered :

By Mr. Justice Sutherland. The decree of the chancellor must be affirmed, if the covenant or article of agreement tendered by Taylor to Wright on the 7th day of July, 1831, is in substance and legal effect such as Taylor, by his bond to Wright of the 17th day of May, 1830, bound himself to procure to be executed by Andrew Taylor and David Selden of Liverpool, and to be delivered to Wright within nine months from the date of the bond. A duplicate copy of the instrument which Taylor was to procure to be executed was referred to in the bond, and was attached to it. The instrument tendered is admitted to be a literal copy of that in every thing except the memorandum which precedes the signature of the witness ; it was regularly signed and sealed by the parties. The substance of the attestation or memorandum is, that Taylor and Selden declared at the time of executing the bond that Selden was not a partner of the firm of Wright, Taylor & Co. This is in no respect contradictory to, or inconsistent

ALBANY,
Dec. 1832.

Wright
v.
Taylor.

with the instrument itself. The clear and irresistible infer- ence from the whole of the instrument is that Selden was not considered as a partner of Wright and Taylor. It re- cites in express terms that *Wright* and *Taylor* had been partners under the firm of Wright, Taylor & Co., in which concern the said David Seldon had some interest in lieu and satisfaction for his services rendered ; and every part of the instrument in which it is necessary to speak of or allude to, the individuals composing the firm, *Wright* and *Taylor* alone are named. *Wright* assigns all the estate, property and debts belonging to the firm to Taylor, for his own exclusive use, and gives Taylor full authority to use his name in col- lecting and discharging the same, and constitutes him his at- torney for that purpose ; and *Taylor* covenants with *Wright* that he will pay and discharge all debts, &c. which they, *Wright* and *Taylor*, jointly owe to any person or persons by reason of *their said partnership*, and save him harmless and keep him indemnified from all suits, costs &c. ; and the only covenant which Selden gives is a joint covenant with Taylor, discharging Wright from all claims and demands whatever, and the only covenant from Wright to Selden is also a cov- enant of release and discharge from all demands whatever. The covenants were proper, considering Selden, as he is sta- ted in the instrument itself, to have been a mere clerk, re- ceiving a certain portion or per centage of the profits by way of compensation for his services. Whether he was a part- ner or not, as respects third persons, is a matter in which Wright has no concern. If the memorandum, therefore, had been inserted in the body of the instrument, although it would have varied the form, it would not have changed the legal effect of it.

But if it were contradictory to the body of the instrument, it constituted no part of it, and could not affect or vary its con- struction. It is a mere memorandum made by the witness of the parol declarations of some of the parties when they exe- cuted it, the other party not being present or assenting to it. The witness having made a memorandum of those declara- tions preceding his attestations, gives to them no other or greater effect than they would have had without it. If it were a material fact to be proved, the witness would have to

ALBANY,
Dec. 1832.

Wright
v.
Taylor.

testify to it, notwithstanding the memorandum ; the only effect of the memorandum would be to refresh his memory in relation to the transaction. Nothing is better settled than that parol evidence is inadmissable to contradict or vary a written instrument. 1 *Johns. Dig.* 578, *and cases there collected.*

The condition of the respondent's bond was therefore performed, except in point of time, by the tender of the instrument made by him on the 7th of July, 1831 ; and the appellant's damages for the delay are the subject of an action at law, and not of a bill in chancery. All the equities of the parties were presented by the bill filed by Taylor against Wright to be relieved from the strict performance of the condition of his bond, and to stay the suit at law which Wright had commenced upon it. He offered in that bill to pay such damages as Wright had sustained by reason of the delay. Wright's bill, therefore, considered as a cross bill, was entirely unnecessary. If Taylor's bill is sustained, an issue or reference may be awarded to ascertain Wright's damages, which will be decreed to him. If the bill should be dismissed, then he will proceed with his suit at law to recover his damages.

In every point of veiw, therefore, the appellant's bill was without equity, and was properly dismissed ; and the decree below ought to be affirmed.

The CHIEF JUSTICE and Mr. Justice NELSON concurred in the opinion delivered by Mr. Justice Sutherland.

By Mr. Senator ALLEN. The object of the bill in this case is to obtain from the respondent a specific performance of the condition of his bond, and to recover damages said to be sustained, or which may yet be sustained by the appellant by the non-performance thereof. The appellant charges in his bill, 1. That the articles of agreement were not delivered at the time stipulated in the bond ; 2. That they are not in fact the articles of agreement covenanted to be executed and delivered, but materially variant therefrom ; and 3. That it was a principal object with the appellant that David Selden should be made a party to the settlement in the character of a co-partner. These are the principal grounds upon which the appellant relies to obtain a reversal of the chancellor's decree.

It appears that the articles of agreement were tendered on the 7th of July, 1831. They had been returned, however, executed by Taylor and Selden in May previous, and it seems would have been delivered, had the residence of the appellant been known. His absence from the city was the probable cause, as he states that he expected to be absent from the city of New-York, and had provided for their delivery to his counsel. I am unable to perceive how any serious injury could by possibility be sustained by the appellant by the delay of a few months in the delivery of the articles, especially as he held the bond of the respondent, which provided for a full indemnity in the event of any failure on his part to perform the condition of the contract. If any injury has been sustained, it was at least augmented, if not altogether incurred by the appellant's refusal to accept the articles when tendered, and by persisting in the several suits instituted on the subject. A court of equity will not decree the specific performance of an agreement, if by so doing injustice will be done ; and in the exercise of their discretion, they will consider the circumstances of the case, and will not permit advantage to be taken of an event that may have delayed a strict performance of the agreement, provided the failure is not substantial. 2 *Young & Jervis*, 372. 6 *Johns. Ch. R.* 117.

The most material objection relied on by the appellant is, that the conditions of the articles are varied in their import by the protestation added by the witness Clay ; which, as the appellant contends, releases David Selden from responsibility as a partner in the house of Wright, Taylor & Co. There is nothing in the case, that I am able to perceive, which shows David Selden to have been a copartner, in the true acceptation of the term. The bond of John Taylor states, that "whereas Samuel Wright and Andrew Taylor have heretofore been in copartnership, under the name and firm of Wright, Taylor & Co." If Selden was one of the partners of the house, why was his name omitted ? The articles of agreement also recite, that "whereas the parties hereto of the *first* part and *second* part have heretofore been copartners in trade." The parties of the first and second part are *Wright* and *Tay-*

*lor.*   *Selden* is described as the party of the third part, and if he was in reality considered as a partner, why was he excluded as a partner in the recital? Every word of the agreement, from the beginning to the end, shows conclusively that neither Wright or Taylor considered Selden as a partner of the house.   His interest was no more than a commission or small portion of the profits, without incurring any of the responsibilities of the firm, or furnishing any part of the capital, or, as it is stated in the agreement, he had "some interest in the profits of the concern, in lieu and satisfaction for his servces rendered." The protestation, as it is called, in no wise differs from the whole scope and purport of the agreement, considered as a whole; for it merely declares that " David Selden was not a partner, nor had any share in the profits or loss of the said concern, but that he was merely entitled to compensation for services, by a commission or per centage on the profits, without being a partner." There is therefore no difference, in point of fact, that I can perceive, between the words of the agreement and those used in the protestation, supposing the latter to be of any validity.   I think, however, that this protestation cannot be considered as forming any part of the agreement. Had it been sanctioned by the signature of Andrew Taylor and David Selden, or even by their initials, the case might have been different; but as it stands separate and distinct from the agreement, and only over the signature of C. W. Clay the witness, it can be viewed in no other light than as the memorandum of the witness, and not of the parties to the agreement.   Additions to a writing leave the instrument valid as to the parties previously executing it, it not having affected the situation in which they stood to each other. There is no authority which declares that a writing thus added, and not operating upon the provisions of the instrument, relating to the parties who had previously executed it, should avoid it.   4 *Barn. & Ald.* 675.

The appellant avers that the protestation deprives him of the right he would otherwise have to call on Selden for contribution as a copartner, provided Taylor should in any event fail to make payment of the debts of the firm of Wright, Taylor & Co., as he covenants to do.   The bond and agreement

were executed in May, 1830, by which John Taylor obligates himself to keep Samuel Wright free from arrest against any suits brought against him by the firm ; and by the agreement, Andrew Taylor binds himself his heirs, &c. to pay all debts which Samuel Wright and Andrew Taylor jointly owe to any person or persons, for or by reason of their copartnership. Selden, however, is not bound to the payment of the copartnership debts, which he ought to have been if he was a partner ; he only covenants to release Wright from all claims and demands he may have against him, and Wright does the same as it respects Selden. The appellant filed his bill in October, 1831. Here is a period of seventeen months from the execution of the articles of agreement to the filing of the bill ; but there is no allegation that in all this time the appellant has been called on to pay any debt of the firm of Wright, Taylor & Co., and I am bound to conclude, therefore, that there has been no failure on the part of Andrew Taylor in fulfiling to the letter this essential part of the agreement. As a further corroboration, the appellant states that, in July 1831, he commenced a suit on the bond, assigning as the only breach, the non-delivery of the agreement at the expiration of the nine months. This was fourteen months after the execution of the agreement, and twenty months after the dissolution of the partnership, which took place in November, 1829, and still we hear of no call made upon appellant for any debt due by the firm. It is plain therefore, as I think, that the fears of the appellant that he will be deprived of security and made liable for the debts of Wright, Taylor & Co. by the effect of the protestation, is without the least foundation in fact. I am of opinion, therefore, that the protestation does not vary the articles of agreement ; at least, that there is not such a variation as to affect the provisions of the instrument, or the interest of the parties to it.

The original foundation of the decrees of courts of equity for a specific performance of contracts, we are told, was simply this : that damages at law would not give the party a compensation to which he was entitled ; that it would not place him in a situation as beneficial as if the agreement were specifically performed. On this ground, courts of equity,

in a variety of cases, have refused to interfere where the damages recoverable at law were commensurate with the injury sustained. 2 *Sch. & Lef.* 552. 3 *Cow.* 505. The remedy therefore, in cases of this kind, is by a suit at law, if the appellant shall decide to litigate the matter further. That the penalty in the bond is more than sufficieut to cover any damages which may be sustained, is evident by the appellant's own showing. He avers that he has already sustained damages amounting, as he believes, to $20,000, and should the articles of agreement be hereafter procured, as originally agreed on, the damage by the delay will most probably exceed the sum of $10,000. Thus the whole amount of damage laid in the bill is $30,000, while the amount for which John Taylor is bound is $50,000—a sum more than sufficient, it is presumed, to cover any damage the appellant would be able to prove. The tender of the articles of agreement by the respondent, with an offer to pay all damages then sustained, was, in my opinion, a fulfilment of the contract; and therefore, for this and the foregoing reasons, the decree of the chancellor ought to be affirmed.

All the members of the whole court, with the exception of one member, being of opinion that the decree of the chancellor ought to be affirmed, it was thereupon accordingly *affirmed*.